UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JESSICA PAIGE JOHNSON, *by her parent*
*Susan Johnson*; and SUSAN JOHNSON,

                              Plaintiffs,

   -against-                                     1:05-CV-0277
                                                          (LEK/RFT)
BOARD OF EDUCATION OF THE GLENS
FALLS COMMON SCHOOL DISTRICT; *et al.*,

                              Defendants.
_____

### MEMORANDUM-DECISION AND ORDER[1]

### I. Background

Plaintiff Jessica Paige Johnson, by her parent Susan Johnson, and Plaintiff Susan Johnson (collectively "Plaintiffs") brought this action pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 792, *et seq.*; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; the Civil Rights Act of 1871 ("§ 1983"), 42 U.S.C. §§ 1983, 1988; New York Education Law § 4401, *et seq.*; and Article XI, Section 1 of the New York State Constitution. Plaintiffs filed a Complaint on March 3, 2005, and thereafter filed an Amended Complaint on April 6, 2005. See Complaint (Dkt. No. 1); Amended Complaint (Dkt. No. 4). Defendants filed an Answer on April 25, 2005. See Answer (Dkt. No. 6).

On February 17, 2006, this Court received the Report of the Mediator stating that the case did not settle, and would be proceeding toward trial. See Report of Mediator (Dkt. No. 10).

---

[1] For printed publication by the Federal Reporters.

Thereafter, on April 30, 2006, Defendants filed a Motion seeking summary judgment (Dkt. No. 12), and Plaintiffs filed a Motion seeking partial summary judgment (Dkt. No. 13).

The following are the pertinent facts.

Plaintiff Student was first identified as having a disability in pre-kindergarten, and was diagnosed as having attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), anxiety disorder, physical impairment by a clubbed foot, and severe hearing loss in her right ear. See Plntfs' State. of Mat. Facts (Dkt. No. 13, Attach. 2) at ¶¶ 6-7. Through her completion of the third grade in the Glens Falls City School District,[2] Plaintiff Student was classified by the Committee on Special Education ("CSE") of the City School District as having a handicapping condition - Other Health Impairment ("OHI") - and she received special educational services as spelled out in her Individual Educational Plan ("IEP"). Id. at ¶8. Even as of April 2003 - just before Plaintiff Student entered the Defendant District as a student - the City School District CSE classified Plaintiff Student as OHI, and specified services and counseling in her IEP for the 2003-04 school year. Id. at ¶¶ 9-10.

Plaintiff Student enrolled in the Defendant Glens Falls Common School District in September of 2003, as a fourth grade student, and the CSE of the Defendant District determined that the recommendations of the City School District would be implemented - thereafter memorializing that determination, and the related services, in an IEP. Id. at ¶ 10-15.

Evaluations of Plaintiff Student were conducted over the next several months, and a CSE meeting was scheduled for December 18, 2003. Id. at ¶¶ 16-17. Although Plaintiff Parent was

---

[2] The Glens Falls City School District is apparently a different entity from the Glens Falls Common School District. Only the Common School District is the Defendant in this matter. See Plntfs' State. of Mat. Facts (Dkt. No. 13, Attach. 2) at ¶¶ 8, 10.

2

unable to attend the December 2003 meeting, the CSE modified the IEP to reflect a determination that Plaintiff Student receive preferential seating in class, and follow-up by the teacher to confirm understanding of lessons. Otherwise, the IEP remained unchanged from prior versions. Id. at ¶¶ 18-19. Plaintiff Student's behavior in class, and academic performance deteriorated over the course of the 2003-04 school year. Id. at ¶¶ 20-21.

While Plaintiff Parent had not received minutes from the prior CSE meetings, the CSE scheduled another meeting for February 9, 2004, which Plaintiff Parent also was not able to attend. In addition, the meeting notice sent to Plaintiff Parent did not contain the notice of procedural rights mandated by the IDEA, and the CSE did not notify Plaintiff Parent that Plaintiff Student could be declassified at the meeting. Id. at ¶¶ 24-27. The February 9, 2004 CSE team at the meeting also did not have all of the mandated members in attendance. Id. at ¶ 28.

Although Plaintiff Parent was not present at the meeting, and did not waive her rights, the CSE team declassified Plaintiff Student at the February 9, 2004 meeting, creating an IEP that stated her need "[could] be met under a 504 plan." Id. at ¶¶ 29-33. Therefore, since Plaintiff Student was declassified, she was thereafter ineligible for special education services. Id.

Defendants again recommended that Plaintiff Student be declassified at a March 4, 2004 CSE meeting - a meeting for which the notice to Plaintiff Parent again did not contain the notice of procedural rights mandated by the IDEA, and the CSE did not notify Plaintiff Parent that the CSE would be recommending declassification. Id. at ¶¶ 38-43.

Following behavioral issues, Plaintiff Student was suspended on several occasions, and was placed in a one-to-one student-teacher environment at the request of Plaintiff Parent. Plaintiff Student remained in that setting until May or June of 2004. Id. at ¶¶ 45-48. Thereafter, Plaintiff

Parent requested a referral back to the CSE, and requested an evaluation by a neuropsychologist - but the CSE refused both. Id. at ¶¶ 49-50. Plaintiff Parent then demanded a due process hearing before an Impartial Hearing Officer ("IHO"), on May 27, 2004. Id. at 51.

According to Plaintiffs, following a hearing the IHO determined, on September 15, 2004, that:

> Jessica was entitled to services under § 504, denied Plaintiffs' request for compensatory education, and a neuropsychological evaluation, and directed that a CSE should conduct evaluations, including a neurological evaluation, that the school physician should attend the next CSE meeting, and that after the evaluation process, the CSE should determine whether Jessica was eligible for special education.

Id. at ¶ 57. See also Sept. 2004 IHO Decision (Dkt. No. 12, Attach. 3, Ex. 15).

Plaintiffs appealed the IHO's decision to the State Review Officer ("SRO"). See Plntfs' State. of Mat. Facts (Dkt. No. 13, Attach. 2) at ¶ 58.

The SRO issued a decision on December 24, 2004, finding, *inter alia*, that Defendants had made numerous procedural errors in declassifying Plaintiff Student; had not complied with New York State regulations; had denied Plaintiff Parent her right to effectively participate in the meetings; and had denied Plaintiff Student a free and appropriate public education ("FAPE"). Id. at ¶ 59; SRO Decision (Dkt. No. 12, Attach. 3, Ex. 16), (Dkt. No. 13, Attach. 4, Ex. C).

Upon annulling the IHO's decision, the SRO remanded the case back to the CSE for reimbursement for the neuropsychological evaluation of Plaintiff Student, and a re-evaluation of Plaintiff Student with full parental participation, in line with all relevant State and Federal regulations. Plntfs' State. of Mat. Facts (Dkt. No. 13, Attach. 2) at ¶ 60; SRO Decision (Dkt. No. 12, Attach. 3, Ex. 16), (Dkt. No. 13, Attach. 4, Ex. C). Specifically, the SRO stated:

**IT IS FURTHER ORDERED** that the matter is remanded to respondent's CSE to conduct

> a reevaluation of the child, including a consideration of any and all evaluations conducted pursuant to the order of the impartial hearing officer, with full parental participation and in compliance with all state and federal regulations, to determine whether the child should continue to be classified as a child with a disability.

SRO Decision (Dkt. No. 12, Attach. 3, Ex. 16), (Dkt. No. 13, Attach. 4, Ex. C) at 11.

Plaintiffs claim that, *inter alia*, the CSE has refused Plaintiffs' demands for attorneys' fees, and the CSE has failed to re-convene a meeting, re-evaluate Plaintiff Student, or comply with orders of the IHO[3] and SRO. See Plntfs' State. of Mat. Facts (Dkt. No. 13, Attach. 2) at ¶¶ 63-80. This Federal Court action has followed.

The Court will now evaluate the Motions by Defendants and Plaintiffs. For the reasons that follow, Defendants' Motion is **granted**, and Plaintiffs' Motion is **denied**. This matter is dismissed without prejudice to refiling upon proper exhaustion of all administrative procedures and remedies.

## II. Discussion

### *A. Standard of Law - Summary Judgment*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In applying the standard, courts must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary

---

[3] A second IHO Order was issued in this matter on March 15, 2006 - after this case was filed in this Court. That Order remanded to the CSE for further proceedings consistent with the Order of the SRO, and for the re-evaluation and possible re-classification of Plaintiff Student. See March 2006 IHO Order (Dkt. No. 13, Attach. 6, Ex. N). That Order is also addressed *infra*, see n.4.

judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).  Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 252 (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### B.  *Administrative Procedures in New York Under the IDEA*

The procedure adopted by the State of New York for compliance with the requirements of the IDEA is well-settled and well-known.  As such, this Court herein cites to a discussion by our Sister Court in the Southern District for a recitation of the relevant procedure:

> Under the IDEA, "[t]he particular educational needs of a disabled child and the services required to meet those needs must be set forth at least annually in a written IEP."... The IEP is to be developed by "[a] school official qualified in special education, the child's teacher, the child's parents, and, where appropriate, the child."... An IEP must state:
>
> (1) the child's present level of educational performance; (2) the annual goals for the child, including short-term instructional objectives; (3) the specific educational services to be provided to the child, and the extent to which the child will be able to participate in regular educational programs; (4) the transition services needed for a child as he or she begins to leave a school setting; (5) the projected initiation date and duration for proposed services; and (6) objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.
>
> ...

6

> New York has elected to meet its IDEA obligations by "assign[ing] responsibility for developing appropriate IEPs to local [CSEs], the members of which are appointed by school boards or the trustees of school districts."... New York's education regulations appear to track the IDEA closely as "[i]n developing a particular child's IEP, a CSE is required to consider four factors: (1) academic achievement and learning characteristics; (2) social development; (3) physical development; and (4) managerial or behavioral needs."...
>
> Parents who are ultimately dissatisfied with an IEP may request, pursuant to IDEA-mandated procedures, a hearing to be held before a IHO who is appointed by the school board.... The non-prevailing party may then appeal the IHO's decision to an SRO at the New York State Education Department's Office of State Review.... A party dissatisfied by the decision of the SRO may then appeal from that determination either by filing an Article 78 proceeding in New York State Supreme Court or by bringing an action in the appropriate federal district court....

J.R. v. Bd. of Educ. of City of Rye Sch. Dist., 345 F. Supp. 2d 386, 393-94 (S.D.N.Y. 2004) (Conner, Senior D.J.) (citing, *inter alia*, Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122, 123 (2d Cir. 1998) (citing in turn, *inter alia*, 20 U.S.C. §§ 1401(a)(20), 1414(a)(5); N.Y. EDUC. LAW § 4402(1)(b)(1); N.Y. COMP. CODES R. & REGS., tit. 8, § 200.1(kk)(2)(i)); M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers, 231 F.3d 96, 100 (2d Cir. 2000) (discussing and citing in turn, *inter alia*, 20 U.S.C. § 1415(b)(2); N.Y. EDUC. LAW § 4404(1)); Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist., 281 F. Supp. 2d 710, 713 (S.D.N.Y. 2003)); N.Y. EDUC. LAW §§ 4404(2), (3)).  See also Vultaggio ex rel. Vultaggio v. Bd. of Educ., 343 F.3d 598, 600-01 (2d Cir. 2003).

### C.  *Plaintiffs' Claims Must Be Dismissed for Failure to Exhaust*

It is clearly settled law in this Circuit that prior to the filing of a Federal claim or claims under the IDEA, plaintiffs must fully exhaust their State administrative procedures and remedies. See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478 (2d Cir. 2002);

Hope v. Cortines, 69 F.3d 687 (2d Cir. 1995); Hope v. Cortines, 872 F. Supp. 14, 21 (E.D.N.Y. 1995).

Furthermore, not only must claims brought pursuant to the IDEA be administratively exhausted prior to the filing of a Federal action, but the "'broadly applicable' exhaustion requirement [also] applies... to claims under the ADA and Section 504 of the Rehabilitation Act, if the plaintiff 'seek[s] relief that is also available under [the IDEA].'" Cave ex rel. Cave v. E. Meadow Union Free Sch. Dist., No. 07 CV 0542(ADS)(MLO), 2007 WL 625386, at *22 (E.D.N.Y. Feb. 28, 2007) (citing 20 U.S.C. § 1415(l); Polera, 288 F .3d at 483; Hope, 872 F. Supp. at 21). See also Vultaggio ex rel. Vultaggio v. Bd. of Educ., Smithtown Cent. Sch. Dist., 216 F. Supp. 2d 96 (E.D.N.Y. 2002), aff'd, 343 F.3d 598 (2d Cir. 2003).

Plaintiffs posit that Defendants' exhaustion argument should be disregarded, since, *inter alia*, Plaintiffs received a favorable ruling from the SRO and the School District has subsequently failed to implement the needed and necessary educational programs. See Plntfs' Mem. of Law in Opp. (Dkt. No. 26, Attach. 1) at 2-6. However, although the SRO did find a denial of FAPE, a review of the SRO decision in this matter illustrates that the SRO remanded this matter to the CSE, with instructions that the School District pay for the neuropsychological evaluation of Plaintiff Student, and then perform a re-evaluation of Plaintiff Student to determine *if* re-classification of Plaintiff Student as a child with a disability was necessary. See SRO Decision (Dkt. No. 12, Attach. 3, Ex. 16), (Dkt. No. 13, Attach. 4, Ex. C). Plaintiffs were only successful insofar as the SRO ordered consideration of the neuropsychological examination and a re-evaluation of Plaintiff Student pursuant to all applicable regulations. The ruling remanded for further proceedings. The SRO found a denial of FAPE based upon procedural violations below, not necessarily in the

substantive classification itself or the offerings of educational plans and goals. According to a reading of the SRO decision, further proceedings upon remand at the local CSE level were contemplated. See, generally, Vultaggio, 216 F. Supp. 2d at 106-07. There was no specific plan to implement, no specific identification of services to be provided or goals to be achieved in the SRO decision. Administratively speaking, the procedural avenues in this case are not yet exhausted.

This Court relies on guidance from the Second Circuit in Polera in addressing the exhaustion issue in this matter. As the Polera Court made clear:

> the exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can "get it right": that the agencies themselves are in the optimal position to identify and correct their errors and to fine-tune the design of their programs. Sweeping exceptions to the exhaustion requirement are at odds with this belief.
>
> Therefore, a court must closely examine a plaintiff's claims before concluding that they involve nothing more than "implementation" of services already spelled out.... Here, [Plaintiff's] assertion that her claim relates solely to implementation does not make it so. A review of the record reveals that the [Defendant's] alleged failure to provide services is inextricably tied to the content of the IEPs and therefore is much more than a failure of implementation. Simply put, [Plaintiff's] IEPs failed to spell out the services to be provided.... In order to identify those services (for example, to ascertain the content of a "curriculum"), we are left either to speculation or to reliance on extrinsic evidence.... This is not the sort of case... in which a school has failed to implement services that were specified or otherwise clearly stated in an IEP. [Plaintiff's] claim unavoidably encompasses both a failure to provide services and a significant underlying failure to specify what services were to be provided.

Polera, 288 F.3d at 489.

This Court finds Polera to be sufficiently on point. Other than the fact that Plaintiffs in the matter currently at bar sought one round of administrative hearings and appeals prior to seeking relief in Federal court (as opposed to those in Polera who went directly to Federal court to seek relief), Plaintiffs in the present matter chose to bypass the administrative remedial process the

9

second time around and come to this Court prior to re-litigating their claims before an IHO *and* SRO. Plaintiffs seek relief for allegations that, *inter alia*, Defendants have failed to comply with the SRO's ruling, and a subsequent IHO ruling,[4] that the CSE determine if Plaintiff Student required re-classification, as well as provision of educational services. In this situation, if Plaintiffs allege a problem with enforcement of prior orders, or a continuing procedural denial of FAPE, they should have commenced another impartial hearing and, if necessary, an appeal to the SRO before filing in this Court. Again, it is clear that "Congress's belief, expressed through the statutory scheme, [is] that administrative agencies can "get it right": that the agencies themselves are in the optimal position to identify and correct their errors and to fine-tune the design of their programs." Polera, 288 F.3d at 489. See also Vultaggio, 216 F. Supp. 2d at 103 (Although concerned with the Complaint Review Procedure ("CRP") and not more formal Due Process Hearings, when addressing the common issue of exhaustion under IDEA the Court stated: "Put simply, any argument that could be raised in an administrative setting, should be raised in that setting. Such arguments include, by way of example, alleged procedural violations by the local school district and the alleged bias of a

---

[4] The Court notes that the second demand for an Impartial Due Process Hearing was filed by Plaintiff Parent on December 5, 2005 - after this matter was filed in this Court. However, as stated by the Hearing Officer in the second IHO decision of record in this matter, "Parent asserts that the issue presented to the SRO, and currently on appeal with the District Court, is whether or not the Student should be classified, not what services she shall receive while classified." March 2006 IHO Decision (Dkt. No. 13, Attach. 6, Ex. N) at 4. Plaintiffs appear to be bringing claims piecemeal, instead of exhausting all administrative remedies first before filing in Federal court (see Plntfs' Mem. of Law in Reply (Dkt. No. 30) at 1-2, 5, wherein Plaintiffs admit they have both exhausted and unexhausted claims, request bifurcation of the Motion for summary judgment, and state that they had not determined at the time of the filing whether or not to appeal the SRO's more recent May 2006 decision - all indicating that the case had been filed in this Court prior to resolution of all administrative avenues below). This is not the proper procedure for IDEA and related claims. And, as addressed below, Plaintiffs are not in a position where exhaustion would be futile.

hearing officer.") (citing Sabur v. Brosnan, 203 F. Supp. 2d 292, 301 (E.D.N.Y. 2002)).[5]

Since the SRO did order a neuropsychological evaluation of Plaintiff Student, paid for by the School District, and a re-evaluation of Plaintiff Student's educational needs and classification, Plaintiffs were not running up against a wall of futility with no end or relief or available remedy/remedies in sight.  Therefore, this Court finds there to be no reason to grant a futility exception to Plaintiffs' need to fully exhaust their administrative procedures and remedies in this matter before returning to this Court with any remaining claims.[6]

---

[5] Plaintiffs argue that reliance on Vultaggio is misplaced, since the case concerned the less formal CRP, which is not provided for specifically in the IDEA.  See Plntfs' Mem. of Law in Opp. (Dkt. No. 26, Attach. 1) at 4-5.  However, the Second Circuit in Vultaggio - while acknowledging that the CRP is not provided for in the IDEA, and while stating that no avenue of appeal exists from the CRP (*except* for the filing of a request for an impartial due process hearing) - also found that the CRP is "an optional step *toward* binding relief." Vultaggio, 343 F.3d at 601 (emphasis added).  If an impartial due process hearing is convened, then the issues addressed in that hearing may no longer be addressed by the CRP.  Id.  Furthermore, the due process hearing decision becomes binding in the matter.  Id. (citing 34 C.F.R. § 300.661(c)).  And, the Second Circuit made clear that "[t]he impartial due process hearing and an appeal from the resulting decision *are prerequisites for a civil action*."  Id. (emphasis added; citing 20 U.S.C. § 1415(i)(2)).  As the Court also discussed, "[a]ggrieved parents and children *who wish to avoid or postpone an impartial due process hearing* have the option of starting a CRP."  Id. (emphasis added).  Therefore, the CRP is an optional first-step, which may precede a due process hearing, but need not do so.  However, as the Second Circuit stated, the due process hearing and an appeal therefrom to the SRO (the administrative procedures in New York under the IDEA) are prerequisites for an action in Federal court.  Thus, reliance on Vultaggio is not misplaced in this matter, since the Vultaggio decisions address, among other things, the exhaustion requirement under the IDEA - which requirement is very much relevant to any claim that eventually ends up in Federal court, whether by way of starting at the optional CRP or the mandatory IHO.

[6] Although Plaintiffs have informed this Court, by letter dated February 5, 2007, that Plaintiff Student is no longer enrolled in Defendant School District, and "she will never be a student in that District again", see Plntfs' Letter (Dkt. No. 32) at 2, that does not implicate futility according to this Court's understanding of relevant jurisprudence.  Unexhausted administrative procedures and remedies existed at the time Plaintiffs filed their Federal case, and there are administrative procedures that still exist for Plaintiffs at this time - since Plaintiff Student, although in a different district, is still of school age and is still covered under the IDEA and related statutes.

11

Due to a failure to exhaust, Plaintiffs' claims are **dismissed without prejudice** to refiling upon proper exhaustion of administrative remedies.[7] The Court, therefore, does not reach or address the remaining issues raised in this matter.[8] Defendants' Motion for summary judgment is **granted**, and Plaintiffs' Motion is **denied**. Likewise, given the disposition just announced, Plaintiffs' requests for costs and attorney's fees are **denied without prejudice**.

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Motion for summary judgment (Dkt. No. 13) is **DENIED**; and it is further

---

[7] Since Plaintiffs' claims under § 1983 are inextricably related to the claims brought under the IDEA, ADA and § 504, the § 1983 claims are dismissed without prejudice, as well, pending the outcome of the administrative procedures.

[8] The Court also recognizes the information communicated to this Court by Defendants that the SRO has issued a decision (on May 31, 2006), see May 2006 SRO Decision (Dkt. No. 29, Attach. 2, Ex. 1), annulling the March 2006 IHO Decision, and finding there to have been no denial of FAPE with regard to the facts litigated therein (post-December 24, 2004). See Defts' Mem. of Law in Reply (Dkt. No. 29, Attach. 1) at 1-2. However, although Defendants have withdrawn their exhaustion argument with regard to the post-December 24, 2004 claims, Defendants still argue for dismissal for failure to exhaust as to the pre-December 24, 2004 facts and claims at issue. See id. at 2-4. Indeed, this Court, as discussed above, has determined that the matter at hand must be dismissed for failure to exhaust. Although some issues have apparently been exhausted, the fact that all of Plaintiffs' claims appear to revolve around the issues of classification and appropriate services, and because the SRO (in December 2004) had remanded for determination or re-evaluation of classification - again, as addressed above - the Court finds it better to dismiss the entire case until all administrative procedures and remedies have been exhausted as to all issues and claims.

**ORDERED**, that the Amended Complaint (Dkt. No. 4) is **DISMISSED WITHOUT PREJUDICE** to refiling upon proper exhaustion of all administrative remedies; and it is further

**ORDERED**, that Plaintiffs' requests for costs and attorneys' fees are **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:   March 29, 2007
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge